FILED
2012 Dec-12  PM 01:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALBERT DEAN EATON, JR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:12-cv-01660-AKK** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Eric Eaton ("Eaton") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Eaton.

## I. Procedural History

Eaton protectively filed applications for Disability Insurance Benefits and Supplemental Security Income benefits on October 2, 2007, alleging a disability

onset date of March 30, 2007 due to spinal fractures that affect his breathing, lost feeling in his left foot and left side of face, high blood pressure, migraines, and two left shoulder surgeries.  (R. 140-149, 155).  After the SSA denied Eaton's applications, he requested a hearing before an ALJ.  (R. 47, 52).  Eaton did not appear at the hearing and, based on his improved condition, requested instead a decision based on the record for a closed period of benefits from March 30, 2007 to November 4, 2009.  (R. 38).  The ALJ subsequently denied Eaton's claims, (R. 18-33), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-5).  Eaton then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3).  Doc. 1; *see also* doc. 10.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.

20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in

sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national
       economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

Turning now to the ALJ's decision, the court notes initially that the ALJ properly applied the five step analysis.  The ALJ first determined that Eaton has not engaged in substantial gainful activity since March 30, 2007, and therefore met Step One.  (R. 29).  The ALJ also acknowledged that Eaton's severe

impairments of back and shoulder pain met Step Two. *Id*. The ALJ proceeded to

the next step and found that Eaton failed to meet or equal one of the listed

impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy

Step Three. *Id*. Although he answered Step Three in the negative, consistent with

the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where

he determined that "[t]he evidence as a whole fails to confirm disabling limitations

arising from the [Eaton's] impairments, and his impairments are not of such

severity that they could reasonably be expected to give rise to disabling

limitations[.]" *Id*. Accordingly, the ALJ found that Eaton has the residual

functional capacity ("RFC") to perform light work but is unable to perform any

past relevant work. *Id*. at 28, 30. With respect to the pain standard, the ALJ found

that Eaton's "statement of disabling pain and limitations during the requested

closed period of disability are not fully credible to the extent alleged in light of the

reports from examining physician[s] and objective, clinical finding[s] on

examination." *Id*. at 27. Finally, the ALJ considered Eaton's age, education, work

experience, and RFC under Rules 202.20 and 202.21 and found that there are

other jobs existing in the national economy that Eaton could perform. *Id*. at 29.

Consequently, the ALJ found that Eaton is not disabled. *Id.* at 27; *see also*

*McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Eaton raises two contentions of error: (1) that the ALJ failed to find a period of disability of at least twelve months, and (2) that the ALJ's RFC findings are not based on substantial evidence.  *See* doc. 10.  As set forth more fully below, the court finds that the ALJ's decision is supported by substantial evidence.

### A.    Twelve Month Period of Disability

To receive benefits, Eaton bears the burden of proving that he was "[un]able to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" during the closed period of his alleged disability.  42 U.S.C. § 423(d)(1)(A) (emphasis added).  Eaton asserts that the ALJ's application of a "light work" RFC for the entire closed period facilitated his "failure to acknowledge even a threshold period of disability" but that  "[t]he medical evidence of record reasonably supports a finding that a threshold period of disability in excess of twelve months was established."  Doc. 10 at 5-6.  In other words, Eaton contends that the ALJ erred by failing to find that Eaton could not engage in substantial gainful activity for at least 12 months because of his impairments.  In order to evaluate Eaton's contention, the court reviews first the medical evidence for the relevant time

period, March 30, 2007 through November 4, 2009.

In that regard, Eaton's relevant treatment history began on April 1, 2007 when he went to the University of Alabama at Birmingham Hospital ("UAB") following a motor vehicle accident. Dr. Jason R. Begue and Dr. Deborah Trujillo evaluated Eaton and CT scans showed that Eaton's cervical spine was negative for fractures or subluxations and there was no evidence of acute traumatic abnormality of Eaton's chest, abdomen or pelvis. (R. 339). Drs. Begue and Trujillo also sutured Eaton's left elbow and ordered an x-ray of Eaton's left shoulder, which was negative. *Id*. The following day, the doctors followed up with Eaton and performed more CT scans but the results were still negative for evidence of fractures, traumatic abnormalities, or joint dislocations. *Id*. at 334, 336-37. A few days after being discharged, Eaton presented at Walker Baptist Medical Center's ("Baptist") emergency department for back and chest pain. *Id*. at 259. At that time, Dr. Mark Douglas Roberts noted "acute appearing compression fractures involving T6, T8 and T9" and suggested a follow up appointment. *Id*. at 271. Instead of returning to Baptist, Eaton went to UAB's Neurosurgery Priority Care Clinic (PCC) for a follow up with Dr. Victoria Hogan, who noted that Eaton's compression fractures were "likely old" and diagnosed Eaton instead with a thoracic spine strain and suggested an additional follow-up exam. *Id*. at 333.

After Dr. Hogan's diagnosis, Eaton followed up with Dr. Patrick Pritchard at PCC four times.  Dr. Pritchard verified the compression fractures, without noting whether they were old or from Eaton's recent accident, and gave Eaton a pain medicine and back brace.  (R. 326).  By early July, Dr. Pritchard noted that Eaton's "extremities [were] working well, [his] pain [was] relatively well managed, [he had] stable curvature and no evidence of subluxation or further deformity."  *Id*. at 325.  At Eaton's final appointment on August 10, 2007, "[r]epeat imaging of his thoracic spine [] revealed the compression fractures to be stable with no evidence of subluxation or further deformity."  *Id*. at 324.  At that time, Drs. Pritchard and Matz[2] stated that Eaton was stable and could remove his brace.  *Id*.

In addition to following up at PCC, Eaton presented at Baptist and the office of Dr. Boyde J. Harrison several times.  Between April and November of 2007, Eaton saw Dr. Harrison, or his nurse practioner Deborah Dyer, six times.  (R. 214-217, 229, 408).  Each time, Eaton complained of chronic back pain and hypertension but Dr. Harrison noted that Eaton's hypertension was "controlled" and prescribed a pain medication.  *See id.*  Eaton presented at Baptist four more times between April and August 2007 because of back or shoulder pain.  *Id*. at

---

[2] Dr. Matz' first name is not included in the record.

244-45, 251, 253-54.  On one occasion Eaton came in wearing a back brace and alleged back pain after a fall in the shower, but left without being seen.  *Id*. at 245. In another two instances, Eaton was released in improved condition with no indication of continued pain or abnormality.  *Id*. at 251, 253.  The last time Eaton came to Baptist, the attending physician diagnosed Eaton with a shoulder sprain but noted that "no other abnormality [was] seen."  *Id*. at 244.

After Eaton's last appointment at Baptist, he was incarcerated at the Marion County jail.  During his incarceration, Eaton was seen a few times by the jail's health provider, QCHC, but never complained of back or shoulder pain.  *See id.* at 422-433.  When Eaton was released from jail, he received treatment at The Foundry.  The Foundry's records indicate that Eaton received over the counter ibuprofen but, notably, fail to indicate back or shoulder pain and instead focus on Eaton's blood pressure and insomnia.  *Id*. at 386-87.

In conjunction with Eaton's attempt to obtain disability benefits, he underwent a consultative examination and physical residual functional capacity assessment in 2009.  Consultative examiner Dr. Jeremy Allen reviewed Eaton's medical history and performed a physical exam on March 19, 2009.  *Id*. at 391. Dr. Allen noted "cervical spine [range of motion] is decreased in left lateral rotation and left lateral flexion.  The remainder . . . are all within normal limits."

*Id*. On the physical capacities evaluation, Dr. Allen noted that Eaton can lift or carry 20 pounds occasionally and 10 pounds frequently, can sit for 5 of 8 workday hours, can operate motor vehicles, can work around hazardous machinery, and can push, pull, climb, balance, manipulate, and bend at least occasionally. *Id*. at 392. Ultimately, Dr. Allen diagnosed Eaton with back and left shoulder pain resulting from previous motor vehicle accidents and stated that "Eaton would likely benefit from a course of physical therapy and evaluation by neurosurgery for surgical therapies of his vertebrae, but in all likelihood with the therapy and surgery it is unlikely he will return to full function and be able to compete in the competitive work environment[.]" *Id*. at 391.

Examiner Debbie Powell, however, partially contradicted Dr. Allen's findings during her physical RFC assessment on April 7, 2009. Powell largely agreed with Dr. Allen's physical capacities evaluation – except that Powell noted Eaton should avoid hazardous machinery and could sit and/or stand with normal breaks for 6 of 8 workday hours. *Id*. at 398-99, 401. Powell expressly noted that she only gave partial credibility to Dr. Allen's report because Dr. Allen's statements regarding Eaton likely not returning to work were inconsistent with the objective medical evidence from Eaton's treating physicians. *Id*. at 403.

The evidence does not support Eaton's assertion of a 12 month period of

disability during the closed period.  While Eaton suffered compression fractures of

his spine and pain after a car accident in April of 2007, his treatment records

indicate that his condition improved considerably by the end of the year.  Indeed,

Eaton's treating physicians noted that Eaton's pain was well managed and that he

suffered from no further abnormalities.  For roughly a year, Eaton failed to allege

back or shoulder pain at all while incarcerated and when released only needed

over the counter pain medicine.  The only medical evidence favorable to a finding

of disability for at least 12 months is the opinion of consultative examiner Dr.

Allen.  Dr. Allen, however, also noted that Eaton could perform a variety of work

related motions such as bending, climbing, and pushing, and that Eaton's

condition would benefit from physical therapy.  As noted by examiner Debbie

Powell and the ALJ, Dr. Allen's statements regarding Eaton's "likely" inability to

return to the work force are unsubstantiated by the medical record and, thus, not

fully credible.  This finding is bolstered by the fact that not long after Dr. Allen's

examination, Eaton was able to return to work - leading Eaton to request disability

benefits for a closed period ending in November of 2009.  *Id*. at 38.  Based on this

evidence, Eaton failed to show that he was "[un]able to engage in any substantial

gainful activity" because of an impairment lasting "for a continuous period of not

less than 12 months" between March 30, 2007 and November 4, 2009.  *See* 42

U.S.C. § 423(d)(1)(A).  Accordingly, the ALJ's findings are supported by substantial evidence.

**B.    Residual Functional Capacity**

Eaton asserts next that the ALJ's decision is erroneous because the RFC findings are not based on substantial evidence.  Doc.10 at 7.  Specifically, Eaton alleges that the ALJ erred because (1) he gave significant weight to the state agency opinion of Dr. Robert Heilpern, which is a physical summary resulting in a "00-02" rating based on Eaton's medical records up to the end of 2007, *see* (R. 348), and (2) the RFC for "light work" is non compliant with the specificity requirements of SSR 96-8p.  Doc. 10 at 8.  The court addresses each of Eaton's assertions below.

    1.    Evidence Considered for RFC

Under 20 C.F.R. § 404.1545, the ALJ must assess Eaton's RFC "based on all the relevant medical and other evidence."  20 C.F.R. § 404.1545(3).  Moreover, the ALJ may "consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."  *Id*.  Based on this regulation, the ALJ's consideration of Dr. Heilpern's opinion is not erroneous as it is still "relevant medical evidence" from Eaton's alleged period of disability.  Although Eaton alleges that "[t]he ALJ did

not explain how Dr. Heilpern's assessment of a rating by number with no further elaboration can possibly amount to an MSO or comport with his own RFC findings," the ALJ specifically stated that he granted this medical assessment significant weight because it is "consistent with the medical record as a whole." *See* (R. 28).  As such, the ALJ did not err in granting weight to Dr. Heilpern's physical summary.

　　2.　　Requirements of SSR 96-8p

　　Eaton's assertion that the ALJ erred by failing to specifically state function by function limitations and restrictions is not persuasive.  SSR 96-8p states that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  *Id*.  Just as in *Freeman v. Barnhart*, 220 Fed. Appx.  957 (11th Cir.  2007), "[w]hile the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [Eaton] claimed.  Only after he determined that [Eaton] failed to carry [his] burden of showing that [he] had become disabled from performing any of [his] work related

activities did [the ALJ] state that [Eaton] could perform light exertional activity. Therefore, the ALJ complied with SSR 96-8p[.]" *Id.* at 960.  Moreover, "the ALJ's analysis of the evidence and statement that [Eaton] could perform light work indicated how much work-related activity [he] could perform because 'light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'" *Id.* (*quoting* SSR 83-10).  Accordingly, the ALJ complied with SSR 96-8p and, based on the evidence, his RFC finding is based on substantial evidence.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Eaton is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 12th day of December, 2012.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE